Bartley, C. J.
This suit was instituted in the court of common pleas of Lucas county, under the act to provide for the collection of claims against steamboats and Mother water-crafts, navigating the waters within and bordering on this state, and authorizing proceedings against the same by name; and was appealed to the district court. The plaintiff declared in assumpsit, as the surviving partner of the late firm of Robey & Thompson, for materials, labor, and supplies in the building, repairing, furnishing, and equipping the boat. The defendant pleaded to the action the general issue, and two special pleas. To the first special plea the plaintiff demurred, and to the second filed a special replication, to which the defendant demurred. On this state of the pleadings the case is submitted:
As a preliminary question in the case, it is insisted, on behalf *25 of the defense, that the law under which the suit has been brought is unconstitutional; and upon this ground we are asked to dismiss the suit for want of jurisdiction. The plaintiff urges, however, that this objection comes too- late after a plea to the merits. If this law be unconstitutional and void, the court has no jurisdiction over the subject-matter of the suit, and, therefore, could render no valid judgment against the boat. To take advantage of a, personal exemption the objection should be interposed before pleading to the merits; but where the court has no authority to take cognizance of the subject-matter of the suit, the proceedings may be dismissed at any stage of the case, when that fact is made to appear.
The objection to the constitutionality of the law is founded uj>on the supposition that the law confers a jurisdiction upon the state courts which conflicts with the admiralty and maritime jurisdiotion conferred by the constitution of the United States on the federal courts; and, also, upon the fact that it provides l'or no no tice to the owner of the boat, or other person interested therein.
It is true that the constitution declares that the judicial power of the United States shall extend “to all cases of admiralty and maritime jurisdictionand by the judiciary act of September 24, 1789, the district courts of the United States are invested with “ exclusive cognizance of all *civil causes of admiralty and maritime jurisdiction.” But it has been, perhaps correctly, said that the exclusive original cognizance of all civil causes of admiralty and maritime j urisdiction is to bo understood to be exclusive as between the district and circuit courts of the United States, and that the jurisdiction may be concurrent with that of the courts of common law, in cases in which a common-law remedy may be adequate and proper since the judiciary aet of 1789 expressly “ saves to suitors, in all cases, the right of common-law remedy, whore the common law is competent to give it.” 1 Kent’s Com. 333 (late od).
Under the constitutional grant of power, the admiralty and maritime jurisdiction of the United States courts was, until recently, limited to cases arising on the high seas and on tide-waters. And the state courts, within the limits embraced by the law of 1789, have always exorcised a concurrent jurisdiction in cases arising within their respective territories.
An act of Congress of the 26th of February, 1845, extended the admiralty forms of remedy in the federal courts, “ to certain cases *26 upon tbo lakes and navigable waters connecting the same.” This law was adjudged to be constitutional by the Supreme Court of the United States, in the case of “ The Genessee Chief v. Fitzhugh et al., How.; but it was held to confer a jurisdiction concurrent merely with the common law and statutory remedies authorized in the courts of the several states. And it would seem strange even that this should ever have been made a question, since this act of Congress, in the concluding clause of it, contained the following express provision : “ Saving to the parties the right of a concurrent remedy at the common law, where it is competent to give it, and any concurrent remedy which may be given by the state laws, where such steamer or other vessel is employed in such business of commerce and navigation.”
The mere fact that the remedy under the state law, which is objected to, is a proceeding in rem, instead of being in personam, furnishes no sound reason for giving an exclusive ^jurisdiction to the United States courts. There is nothing in the nature or character of the subject-matter, which requires its removal from the jurisdiction of the state courts; and the purposes of justice would certainly not be advanced by it.
The other objection has doubtless arisen from confounding the requisites of a proceeding in personam with those of proceeding in rem. By the former, the court acts upon its jurisdiction over the person; by the latter, upon its jurisdiction over th& property itself, which is taken and held within the power of the law. It is undoubtedly a general, if not a universal rule, that in order to bind a defendant, or to confer any rights upon a plaintiff, by force of a judgment, in a personal action, the defendant, if he does not waive a notice by an appearance, must be served with notice of the institution of the suit, so that he may have an opportunity to appear and defend. But the rule is different in a proceeding in rem, where the action of the court has relation to the thing or property, which it binds in the absence of any personal notice to the party interested. Story’s Conflict of Laws, ch. 14, sec. 549; Roswell’s Lessee v. Otis, 9 How. 336.
The first special plea of the defendant sets forth, that at the time of the making of the supposed promises in the declaration mentioned, said steamboat was owned and possessed by Charles 0. Robey, who was then and there a óopartner doing business with said Isaac P. Thompson, and that all the materials, supplies, and *27 labor in the declaration mentioned, were the property of said firm of Robey & Thompson as such copartners, and wore by them as such applied and appropriated in the building, repairing, furnishing, and equipping of said boat.
Do the facts set up in this plea constitute a sufficient bar to the action ?
The plaintiff Thompson sues as the surviving partner of the firm of Robey & Thompson. The death of Robey can not vary the legal principles upon which the action is founded. The plaintiff in this action can not recover, unless Robey & Thompson could have sustained the action in the lifetime of Robey.
*It is well settled, by the course of decisions in Ohio, that the object of this water-craft law was to provide a convenient and efficient remedy by subjecting the liability of the boat or vessel itself, and thus avoid the difficulty which often exists, of ascertaining and proceeding against the owner or owners in person. Section 2 of the law gives the person having the demand the option to proceed against the owner, the master, or the craft itself. By the first clause of section 1, which contains the provision under which this action is brought, the proceeding is authorized against the craft upon a liability sounding in contract. This contract is one to which the owner is a party, and upon which he is himself personally liable. The craft itself is endowed with no capacity to become a party to a contract. The law simply authorizes the craft to be made liable upon seizure by a proceeding in rem. It is true, the craft is named as the defendant in the proceeding, but this does not constitute it an artificial person with capacity to contract. This proceeding, therefore, is only an accumulative remedy given by the statute, for the recovery of a claim against the owner himself. To authorize the owner of a boat or vessel to institute a suit upon 1ns own liability, and against his own property, would be, to say the least of it, a gross absurdity.
Does the fact that the advances wero made by a copartnership firm, of which Charles C. Robey, the owner of the boat, was a member, affect the principles which sustain this action at law? The materials, supplies, etc., furnished to the boat were in fact advances to the owner of the boat; and, therefore, no other than advances by the copartnership to a member of the firm, for which he is liable, upon the principles which govern partnership transactions. But it has never been claimed, that an action at law can *28 be sustained by a partnership against one of its members for advances by the firm.
To allow the owner, either individually or as., a member of a co-partnership, to maintain an action against the craft itself, would afford facilities for frauds against purchasers and ^persons having claims and relying upon the liability of a boat or vessel, which it is the policy of the law to guard against.
The facts set up in this plea, therefore, constitute a. sufficient defense to this action, and the demurrer to the plea will be overruled.
This disposes of the whole case, and it does not become necessary to decide the- question arising upon the second special plea.

Judgment for defendant. ,